IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| BRITTANY WILLIAMS, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. 8:24-cv-1978-PX |
| SAFELITE GROUP, INC., | * | |
| Defendant. | * | |
| | *** | |

**MEMORANDUM OPINION**

In this discrimination case, Plaintiff Brittany Williams ("Williams") accuses her employer,

Safelite Group, Inc. ("Safelite") of retaliation under Title VII of the Civil Rights Act of 1964. ECF

No. 1. Safelite answered the Complaint and now moves for summary judgment and for leave to

assert counterclaims. ECF Nos. 24 & 30. Williams responds and separately moves to sever the

counterclaims. ECF No. 28. The issues are fully briefed, and the Court finds no hearing necessary.

*See* D. Md. Loc. R. 105.6. For the reasons stated below, Safelite's motions for summary judgment

and for leave to file counterclaims are DENIED and Williams' motion to sever is DENIED as

moot.[1]

**I.      Background**

For ten years, Williams worked at Safelite in the Waldorf, Maryland location, first as a

Customer Advocate and eventually as the Store Manager. ECF No. 39-3 at 11:9–17. Throughout,

Williams received high performance reviews. *Id*. at 14–15 (Williams "exceeded her contribution

---

[1] Williams also moves for an extension of time to respond to Safelite's summary judgment motion, ECF No. 41.
The Court grants Williams' motion nunc pro tunc.

budget by $287,280 over FY21" and "exceeded sales by 338,979 for the year delivering 4.185 million dollars in sales in total."). Williams' reviews, however, also reflected that her store struggled with employee retention; as a result, Williams was encouraged to improve her efforts to "connect[] with her tech base and . . . remove obstacles and road blocks keeping her team from leaving [Safelite]." *Id*. at 15. *See also id*. at 16 (supervisor noting that Williams "can fall short listening to her technicians' side" and is not "engaged in active listening.").

In February of 2022, two store technicians under Williams' supervision, Navon Prince ("Prince") and Tobias Marshall ("Marshall"), inappropriately commented about Williams' undergarments ("Britt wears a thong every day"), her breasts, her "nipple piercings," and her "butt." ECF No. 39-5 at 2, 4. Williams, in response, sent Prince and Marshall a copy of Safelite's sexual harassment policy, ECF No. 39-4 at 17, and next alerted Safelite District Manager, Anthony Mazzola ("Mazzola"), about the incident. *Id.* at 15. Mazzola advised Williams that all depending on the nature of the comments, "documentation would be warranted for their behavior." *Id*.; ECF No. 30-2 at 7:11–16. Williams heeded Mazzola's advice, and on March 1, 2022, Safelite assigned Associate Relations Partner, Daryhl Pisano ("Pisano"), to investigate Williams' sexual harassment complaint. ECF No. 39-5 at 2.

Pisano contends that during the sexual harassment investigation, he learned of "additional concerns," about Williams' management style. ECF No. 30-3 at 10:18–22. Accordingly, once Pisano finished investigating Williams' "sexual harassment concerns," he turned immediately to investigating Williams for her performance deficiencies. ECF No. 30-3 at 10:3–11:6. Pisano memorialized his findings and conclusions as to both "investigations" in one, nine-page "investigative summary." ECF No. 39-5 at 2–10.

The investigative summary reflects that Pisano took very different approaches for each investigation. As to Williams' sexual harassment complaint, Pisano highlighted that Marshall and Prince's sexualized comments were merely "**ALLEGED.**" ECF No. 39-5 at 4 (bold and emphasis in original). Pisano next noted that Prince and Marshall "denied ever saying" anything about Williams' appearance. *Id.* Last, Pisano appears to have talked to only one other employee, Dorothy Rowand. Rowand *corroborated* that Prince and Marshall "talk about the physical appearance of female customers," and that she had seen the men "talking and looking in [Williams'] direction as she walks by and it appears like they are talking about [Williams]." *Id.* Nonetheless, Pisano probed no further. He concluded Williams' sexual harassment claim was "unsubstantiated" and gave no reason for this conclusion apart from noting "this is now the third investigation in which Brittany Williams made serious allegations . . . [t]hese allegations are disruptive to the business and damaging to other associates' reputation." *Id.* at 6.

As to the complaints *against* Williams, Pisano seemed markedly more motivated. He interviewed and documented comments from 13 Safelite employees, describing how Williams made coworkers feel "uncomfortable," and fearful that "if you go against" Williams, "you will be sent home." ECF No. 39-5 at 4–6. Pisano also detailed the opinions of "peer leaders" who described Williams as "arrogant," "rude" and "a difficult person to work with." *Id.* at 5. Pisano further solicited feedback from even Prince and Marshall, the "alleged" harassers. Prince commented that with Williams, he felt as if "his job was at stake 24/7." *Id.* at 4. And Marshall asked to be transferred because he "cannot be himself" around Williams, and that she had denied him lunch breaks. *Id.* In short, of the nine-page combined summary investigation, the lion's share had been devoted to documenting complaints against Williams. *Id.* at 2–10.

About a month later, on April 25, 2022, Mazzola, with help from Pisano, issued Williams a "final written warning" about her having created a "toxic" work environment.  ECF No. 39-8 at 6; ECF No. 30-3 at 14:1–16.  This was Williams' first, and only, formal written warning,[2] but it did refer to two prior "coaching" sessions in August and October of 2020 where Safelite district and regional managers discussed with Williams the need to cultivate a healthier workplace.  ECF No. 39-8 at 7.  Also, Safelite reduced Williams' most recent performance review from "Exceeds Expectations" to "Meets Expectations" for the calendar year of 2021.  ECF No. 39-9 at 4.

Based on this, Williams filed a formal complaint against Safelite with the Equal Employment Opportunity Commission ("EEOC") for retaliation.  After investigation, the EEOC found in favor of Williams and proposed the parties enter a reconciliation agreement.  ECF No. 1-1.  Safelite refused.  ECF No. 1 ¶ 11.  Williams next filed this suit, asserting one count of retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C., 2000e *et seq.*, as amended.  Safelite answered the Complaint and engaged in discovery.  It now moves for summary judgment in its favor on the retaliation claim and for leave to bring four counterclaims against Williams pertaining to unrelated misappropriation of confidential corporate information.  ECF Nos. 24, 30.

The Court considers each motion separately.

## II.     Motion for Summary Judgment

### A.     Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law.  *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477

---

[2] Although Williams argues that the Safelite's "corrective action process" mandates two prior written notices before issuing a "final written warning," the Safelite policy is not altogether clear on this point.  ECF No. 39-8 at 9–16 ("Policy grid" designed "to understand common policy violations and additional steps to take").

U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former FED. R. CIV. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted. *Celotex*, 477 U.S. at 322.

### B.    Analysis

Safelite first argues that no evidence reflects that Williams opposed an unlawful employment practice protected under Title VII. Title VII prohibits an employer from taking adverse action against an employee because she has opposed a practice that Title VII forbids. 42 U.S.C. § 2000e–3(a); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59–60 (2006). Protected opposition activity includes complaining to an employer about workplace discrimination. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259–60 (4th Cir. 1998). The complaints may be about activity that is "actually unlawful under Title VII" as well

as that which the employee "reasonably believes to be unlawful." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015).

The sufficiency of a retaliation claim is analyzed under the well-known burden shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To survive challenge, the plaintiff must first make a prima facie showing that (1) she engaged in protected activity; (2) the employer took adverse action against her; and (3) a causal link exists between the two. *See Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018). If the showing is made, then the burden shifts to the employer to demonstrate that "its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Id.* at 328 (quoting *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)). The employee must then rebut the employer's evidence by demonstrating the purported reason was pretextual. *Id.* at 328.

Safelite argues that Williams cannot adduce any evidence to make a prima facie showing. First, Safelite contends that nothing shows Williams had engaged in activity protected under Title VII. The Court disagrees. The record, viewed most favorably to Williams, reflects that she complained about employees' sexualized comments regarding her "thong," breasts, butt, and nipple rings. These comments were so offensive that they prompted Williams to educate Marshall and Prince on Safelite's own definition of sexual harassment. ECF No. 39-4 at 17–18. From this, a reasonable juror could conclude that Williams reported, at a minimum, what she reasonably believed to be sexual harassment. *See Boyer-Liberto*, 786 F.3d at 282; *Laughlin*, 149 F.3d at 259–60.

Next, Safelite argues that Williams cannot show she experienced any adverse action in response. ECF No. 30-1 at 15. This is so, says Safelite, because Williams had not lost her job, nor was she "demoted or stripped of her Store Manager title," and she instead received increased

compensation and bonuses. *Id.* Safelite sorely misapprehends the legal standard applicable to retaliation claims.

For retaliation, an action is sufficiently adverse even if it does not "affect the terms and conditions of employment," so long as the action "might have dissuaded a reasonable worker" from engaging in protected activity. *Burlington*, 548 U.S. at 64, 68. *See also id.* (Title VII "prohibit[s] employer actions that are likely to deter discrimination victims from complaining to the EEOC, the courts, and their employers") (internal quotation and citation omitted). Under the correct standard, Williams clearly has adduced sufficient evidence.

Indeed, Safelite transformed an investigation of Williams' harassment complaint into one about her difficult management style. When viewing Pisano's investigation summary alone, a juror could conclude that he purposely gave Williams' complaint short shrift and instead leaned into creating a case against her. Pisano summarily dismissed Williams' allegations as unsubstantiated and even "damaging" without sufficient grounds. ECF No. 39-5 at 6. In fact, at least one other employee whom Pisano interviewed had corroborated Williams' allegations. Yet Pisano took the investigation no further. But when it came to investigating Williams' wrongdoing, Pisano interviewed scores of witnesses and meticulously documented their negative feedback. This, in combination with Safelite's inexplicable reduction in Williams' performance evaluation during the investigation period, ECF No. 39-9 at 2–6, and the "final written warning," ECF No. 39-8 at 6, is sufficient for a reasonable juror to conclude that Safelite's actions aimed to chill a reasonable employee like Williams from complaining about activity protected under Title VII.

Safelite next argues that no evidence establishes a causal connection between the adverse action and Williams' protected activity. Safelite is correct that in the Fourth Circuit, "proof of a decisionmaker's knowledge of protected activity" is necessary "to support a Title VII retaliation

claim." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 124 (4th Cir. 2021). But the evidence, viewed most favorably to Williams, amply supports this connection.

Williams first complained to her District Manager, Mazzola, about Marshall and Prince having sexually harassed her, and Mazzola advised that she further "document" the incidents. This next led to a widespread investigation, the likes of which Mazzola knew or should have known as District Manager. And then, within two months, Mazzola, *with Pisano's help*, created a robust "final warning" letter that reprimanded Williams for her "toxic" management style. Based on this, the reasonable juror could infer that Mazzola, as supervisor who decided to reprimand Williams, also knew of her protected activity. ECF No. 39-8 at 6. Thus, sufficient evidence exists for Williams to make a prima facie case of retaliation.

Safelite alternatively argues even if Williams made a prima facie showing, she has adduced no evidence to demonstrate that Safelite's grounds for the final warning letter were pretextual. *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 257 (4th Cir. 2025). Although this is a closer call, at the summary judgment stage, sufficient evidence exists for a factfinder to conclude that Pisano conducted a biased "dual investigation," from which Safelite jumped to discipline Williams. For one, a reasonable juror could conclude Pisano's investigation was designed to punish Williams for complaining about sexual harassment. He found Williams' reports to be mere "allegations," devoid of merit, ECF No. 39-5 at 6, and instead took aim at Williams' competency as store manager. Based on this, a juror could conclude Pisano's investigation whitewashed the sexual harassment complaint and made Williams the target of management's ire.

The evidence also reflects that Safelite, through Mazzola, jumped on the opportunity to formally discipline Williams after she made the harassment complaint, whereas before, they were all too ready to praise her stellar sales performance. ECF No. 39-3 at 22–23. Where historically

Williams was recognized for "exceed[ing] expectations," she now found herself inexplicably downgraded and facing a formal warning letter, all on the heels of her harassment complaint. *Id.* at 22. While in the end, a jury may find Safelite's reason for its formal disciplinary action to be well-warranted and thus non-retaliatory, sufficient evidence compels that this decision be left to the trier of fact. Summary judgment on the retaliation claim is therefore denied.

The Court next addresses Safelite's motion for leave to file counterclaims.

## III. Safelite's Motion to For Leave to Assert Counterclaims

Well after the close of discovery, Safelite wishes to incorporate into this case seemingly unrelated counterclaims arising from Williams' alleged misappropriation of trade secrets in 2025. ECF No. 24. Safelite argues that the Court must grant its motion to bring the counterclaims because they are "compulsory." ECF No. 38 at 5. They are not. Under Federal Rule of Procedure 13(a), a compulsory counterclaim is one which "at the time of" serving the pleadings, the pleader "has against an opposing party if the claim: arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." FED. R. CIV. P. 13(a)(1). Safelite did not have such claims to pursue at the time Williams brought this action. *Compare* ECF No. 1 *with* ECF No. 24-2 ¶ 22. Nor did the alleged misappropriation arise out of the "same transaction or occurrence" as the retaliation claim. *See Painter v. Harvey*, 863 F.2d 329, 332 (4th Cir. 1988) ("Where . . . the same evidence will support or refute both the claim and counterclaim, the counterclaim will almost always be compulsory.").

Next, as to permitting the counterclaims to proceed, the Court recognizes that it should "freely give leave" to amend "when justice so requires," *see* FED. R. CIV. P. 15(a)(2). But such leave may be denied if amendment would prejudice the opposing party. *Arora v. James*, 689 F. App'x 190, 190 (4th Cir. 2017). "Prejudice is '[p]erhaps the most important factor' to consider"

on whether to allow amendment of pleadings. *Medline Indus., Inc. v. York Bldg. Prods. Co.*, 702 F. Supp. 3d 403, 408–09 (D. Md. 2023) (quoting C*lass Produce Group, LLC v. Harleysville Worcester Ins. Co.*, No. 16-CV-3431, 2018 WL 5785664, at *3 (D. Md. Nov. 5, 2018) and *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006)). Prejudice may arise where the amended claim "'raises a new legal theory that would require the gathering and analysis of facts not already considered by the [counter-defendant, and] is offered shortly before or during trial.'" *Laber*, 438 F.3d at 427 (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)).

The Court will not allow the counterclaims for three reasons. First, because discovery is closed, Williams would suffer prejudice if the Court granted leave to amend. While Safelite asks the Court to forgive the late motion because it only learned recently of the facts supporting the allegations, ECF No. 24-2 at ¶ 22, reopening discovery would nonetheless necessitate lengthy delays in the retaliation claim that is ready for trial. Second, given the stark dissimilarity between the causes of action, Williams would suffer prejudice if they were tried together. Combining the 2022 retaliation claim with the 2025 misappropriation counterclaims risks substantial juror confusion. Third, Safelite is not prejudiced by the denial of amendment. Because the alleged misappropriation occurred in February 2025, Safelite is well within the time necessary to pursue a separate suit against Williams. Accordingly, Safelite's motion for leave to amend is denied and Williams' motion to sever the proposed counterclaims is denied as moot.

## IV. Conclusion

For the foregoing reasons, Safelite's motion for summary judgment, ECF No. 30, and motion for leave to amend its Answer to assert counterclaims, ECF No. 24, are denied. Williams' motion to sever, ECF No. 28, is denied as moot.

A separate order follows.

 3/13/2026        
Date

          /s/              
PAULA XINIS
United States District Judge

11